**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X
Tiffany Brown,

        Plaintiff,                                            **COMPLAINT**

- against -

H.E.L.P. Homeless Service Corp.; H.E.L.P. USA LLC, and   **PLAINTIFF DEMANDS**
H.E.L.P. USA, Inc.,                                              **A TRIAL BY JURY**
                      Defendants.
Defendants.
-------------------------------------------------------------------------X

Plaintiff, Tiffany Brown, by her attorney, The Rose Law Group, PLLC, upon information and belief, complain as follows:

## NATURE OF THE CASE

1. Plaintiff Brown complains pursuant to <u>Title VII of the Civil Rights Act of 1964</u>, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII") and the <u>New York City Human Rights Law</u>, ("NYCHRL") seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, harassed, discriminated against and retaliated against on the basis of her **gender** and **objection to and complaints about sexual harassment**.

## PROCEDURAL PREREQUISITES

2. Plaintiff Brown filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

3. Plaintiffs charge has pended for more than 180 days and the Right to Sue was issued on September 28, 2022.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is also proper under 42 U.S.C. §12101 et. seq.; 29 U.S.C. §2617. 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto. The Court has supplemental jurisdiction over the claims of Plaintiff brought under city and state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district based upon Plaintiffs residency within Kings County, State of New York, within the Eastern District of New York. 28 U.S.C. §1391(b).

## PARTIES

6. That at all times relevant hereto, Plaintiff Tiffany Brown ("Brown") is a resident of the State of New York and Bronx County.

7. That at all times relevant hereto, Defendant H.E.L.P. Homeless Service Corp.; H.E.L.P. USA LLC, and H.E.L.P. USA, Inc. (together "HELP") are corporations, both for and not for profit, existing by virtue of, the laws of the State of New York, with their principal place of business located at 115 East 13th Street, New York, New York 10003.

8. Upon information and belief, HELP is a group of companies which operate as a single organization, joint employer, and single enterprise and together employed Plaintiff Brown.

## MATERIAL FACTS

9. Plaintiff Brown was hired by Defendant HELP on or about August 22, 2016 on an outreach team earning approximately $17.56 per hour.

10. Plaintiff Brown was an excellent employee and received multiple promotions until, in or around May of 2019, Plaintiff Brown was brought in to work for Defendants housing team as a Housing Specialist.

11. Plaintiff Brown's job required her to assist individuals and families living in shelters to find housing in the city.

12. As part of this new job, Plaintiff Brown reported to Mr. William James, an individual who repeatedly and outrageously sexually harassed Plaintiff Brown from the time she initially came to work under him and then retaliated against Plaintiff Brown for reporting this harassment.

13. Since the very beginning of her time working with Mr. James as her supervisor, Plaintiff Brown was continuously sexually harassed.

14. Mr. James would call Plaintiff Brown into his office where he would comment on her appearance in a sexually explicit way, ask sexually explicit questions of her, provide details of his life that were sexually explicit, and attempt to engage in sexual banter with Plaintiff Brown.

15. Mr. James would refer to Plaintiff Brown as having "a pretty face, nice body and big butt" when explaining why he hired her.

16. Mr. James would ask Plaintiff Brown whether she had ever been to a "swingers club" and asked if she was interested. He then told Plaintiff Brown that he attended such clubs in Philadelphia.

17. To premise each sexually explicit and harassing conversation, Mr. James would first remind Plaintiff Brown that she was on probation in her new position, implicitly threatening her employment and making it clear that he controlled whether she would keep her job or not.

18. By way of example of what was nearly daily harassment, on the first day Plaintiff Brown worked with Mr. James, he told her that he "knew [she] was in the office because [he] could smell [her] perfume" and that she "smells so delicious."

19. Mr. James would comment on how well Plaintiff Brown's clothes fit her, how nice her body was, and that it was nice to have someone in the office who is "nice looking and easy on the eye."

20. On or about June 6, 2019, Mr. James told Plaintiff Brown that he could "smell [her] sweet perfume."

21. On or about July 7, 2019, Mr. James told Plaintiff that all of the men were inquiring about her and telling him that he was smart to have hired her. The context of the conversation made it clear that this was meant to complement her looks and not her performance.

22. When Plaintiff Brown would leave the office, Mr. James would stare at her as she left, leering at her buttocks.

23. Plaintiff Brown was incredibly uncomfortable and felt severely anxious due to this harassment. Due to Mr. James repeated reference to Plaintiff Brown's probationary period she felt threatened and frightened to complaint. She went on enduring the constant harassment throughout the summer of 2019.

24. Mr. James would call Plaintiff Brown into his office and then tell her about sexual encounters he had.

25. Mr. James told Plaintiff Brown that he had different girlfriends throughout the years and told her about his sexual encounters in detail.

26. On or about July 22, 2019, Mr. James told Plaintiff Brown that he had slept with two of his friend's wives. He then asked Plaintiff Brown if she had ever slept with her former boyfriend's friends, attempting to solicit explicit conversation from Plaintiff Brown. Plaintiff angrily shouted "No I have not!" and left.

27. Plaintiff did not at any time indicate that she wanted to have explicit sexual conversations with Mr. James, repeatedly objecting or sitting silently waiting until she could leave his office while he stared at her body and spoke about sexual encounters.

28. Mr. James asked Plaintiff if she would date someone at work, clearly attempting to solicit an invitation to engage in a relationship of a sexual nature. Plaintiff Brown responded that she would

not, making it clear she did not want to engage in this type of conversation or relationship with Mr. James.

29. Mr. James would frequently speak negatively about his wife, telling Plaintiff Brown that he wished she would die and indicating that his wife was an only child and an Aries as justification for the problems in his relationship.

30. Each day, Plaintiff Brown would have to endure these conversations which repeated over time.

31. Mr. James would tell Plaintiff that her boyfriend must "have fun" with her, implying that he was imagining her having sex.

32. Mr. James asked Plaintiff Brown if she had her "butt done".

33. Plaintiff Brown was offended by these questions and remarks.

34. After continuous sexual harassment from the time she started working with Mr. James through the fall of 2019, he pushed Plaintiff Brown to the brink.

35. In or around November of 2019, Mr. James asked Plaintiff Brown "what size breast did [she] get," referring to breast augmentation surgery.

36. Plaintiff Brown could take no more daily harassment as she was suffering and anguishing through work each day while being repeatedly harassed.

37. Finally, Plaintiff Brown went to Human Resources for Defendant and informed them of this harassment.

38. Defendants' HR department told Plaintiff Brown that it was her "word against his" and that if no one could corroborate the harassment then nothing could be done.

39. Plaintiff now feared retaliation as she had complained about her supervisor who regularly raised the prospect of her not passing probation.

40. Mr. James did in fact find out and began telling other employees about it.

41. On one occasion, Plaintiff heard Mr. James telling someone "that shit isn't going anywhere, I can't believe she did that shit."

42. Suddenly, Plaintiff was excluded from meetings and not told about departmental news which would ordinarily been shared with her.

43. In or around November of 2019, Plaintiff Brown was baselessly provided disciplinary write-ups on two separate occasions by Mr. James solely in retaliation for her complaints of discrimination and harassment.

44. Further, on or about January 30, 2020, Plaintiff Brown was called into a meeting with Mr. James who provided a disciplinary write up for failing to provide notes. Plaintiff Brown informed Mr. James that she believed she had provided notes and requested the client's names so she could review the write-up. Mr. James refused and demanded that Plaintiff Brown sign the write-up. Plaintiff Brown refused.

45. This write-up, which is a disciplinary action, was purely in retaliation for Plaintiff Brown's complaints of discrimination.

46. Further, Ms. Taylor, Defendants' Housing Specialist who then became the Housing Director, also began creating a hostile work environment in retaliation for Plaintiff Brown's complaints.

47. Mr. James would further provide no information which Plaintiff needed in order to succeed.

48. Ms. Taylor would kick under Plaintiff Brown's desk, interrupt her throughout the day, call her a liar regarding her complaint of sexual harassment against Mr. James, and otherwise consistently harass Plaintiff Brown both physically and verbally.

49. Ultimately, Mr. James was terminated after having been found to be violating company policy.

50. When Plaintiff Brown applied for his position, it was given to a man who was less qualified than she was and who had not complained about discrimination.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and mental distress.

52. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all Defendants.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

53. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

54. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

55. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendants.

56. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (sexual harassment).

57. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et

seq., by discriminating against Plaintiff because of her gender (female).

58. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq*. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of their opposition to the unlawful employment practices of Defendants.

### AS A SECOND CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

59. Plaintiffs repeat, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

60. The Administrative Code of City of NY § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender,** disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

61. Defendants violated the section cited herein as set forth.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

62. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

63. The New York City Administrative Code Title 8, §8-107 (7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

64. Defendant violated the section cited herein as set forth.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

65. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing of any of the acts forbidden under this chapter, or attempt to do so."

67. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

68. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

69. New York City Administrative Code Title 8-107(19) **Interference with protected rights**. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

70. Defendant violated the section cited herein as set forth.

## JURY DEMAND

71. Plaintiff demands a trial by jury.

   **WHEREFORE**, Plaintiff demand judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.;* and the New York City Administrative Code §8-107 *et. seq.*, in that Defendants sexually harassed, discriminated against, harassed, and retaliated against Plaintiff on the basis of her gender and opposition to discriminatory actions;

B. Awarding damages to the Plaintiff to otherwise make her whole for any losses suffered as a result of such unlawful employment practices including emotional and compensatory damages;

C. Awarding Plaintiffs punitive damages;

D. Awarding Plaintiffs attorney's fees, costs, and expenses incurred in the prosecution of the action;

E. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: Astoria, New York
October 14, 2022

**THE ROSE LAW GROUP, PLLC**

   /s/Jesse C. Rose
Jesse C. Rose (JR-2409)
3272 Steinway Street
Suite 503
Astoria, New York 11103
PH: (718) 989-1864
Fax: (917) 831-4595